UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. _____

IRONSHORE INDEMNITY INC.,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.

_____/

## COMPLAINT - ADMIRALTY & FEDERAL TORT CLAIM

Plaintiff, Ironshore Indemnity Inc. ("Ironshore"), as subrogee of Yvette Suarez and David Singletary, for its Complaint against Defendant, United States of America ("United States" or "the government"), alleges the following:

### JURISDICTION AND VENUE

1. This is an admiralty or maritime claim within the jurisdiction of this Court, and brought within the meaning and intent of Rule 9(h) of the Federal Rules of Civil Procedure.

2. This claim is brought against the United States pursuant to General Maritime Law, the Suits in Admiralty Act, 46 U.S.C. § 30901, et seq., and/or the Public Vessels Act, 46 U.S.C. § 31101, et seq.

3. In the alternative, this claim is also brought against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 & 28 U.S.C. Pt.VI Ch.171 (28 U.S.C. §§ 2671, et seq.), and this Court has original jurisdiction over such claims.

4. Pursuant to Federal Tort Claims Act, 32 CFR § 750.32 & 28 U.S. Code § 1402 venue is appropriate in this district because the act or omission complaint of occurred within this district.

5. Pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30906 and/or the Public Vessels Act, 46 U.S.C. § 31104, this Court has jurisdiction and the venue is appropriate in this district because this is the district where the vessel at issue was found after the incident set forth below.

**PARTIES**

6. At all materials times, Ironshore was and now is a corporation duly organized and existing under and by virtue of the laws of the State of Minnesota, with its principal place of business located at 28 Liberty Street, 5th Floor, New York, NY 10005.

7. At all material times, Ironshore's insureds were Yvette Suarez and David Singletary (hereinafter collectively "Insured").

8. At all materials times, Ironshore provided insurance coverage under a policy of insurance (hereinafter "the Policy") to the Insureds for their 2014 Sunstation 34 Foot Vessel (hereinafter "the Insured Vessel").

9. Pursuant to Section F General Conditions, Subsection 15 of the Policy, Ironshore obtains a right of subrogation for any payments it makes to its Insured under the Policy for damages caused to the Insured Vessel.  This Section of the Policy states:

> **15. OUR RIGHT TO BE REPAID**
> If we make payment for a loss to anyone, or on behalf of anyone who has a right to recover damages from others, we shall take over that person's right to recover the damages. That person must cooperate with us in our efforts to recover the amount which we paid. If we make payment for a loss to anyone or on behalf of anyone who also recovers damages for that loss from others, that person shall hold the proceeds of the recovery in trust for us and shall reimburse us to the extent of our payment.

10. At all times hereinafter mentioned, the United States, through its agency the U.S. Coast Guard, installed, operated and maintained an I-Beam located at Coordinates 20.09137 082 50 40 in the waters of Anclote Key, Florida.

11. At all times hereinafter mentioned, the United States, through its agency the U.S. Coast Guard, installed, operated and maintained buoys, markers and/or other signs or signals for an I-Beam located at Coordinates 20.09137 082 50 40 in the waters of Anclote Key, Florida.

12. At all times hereinafter mentioned, the United States, through its agency the U.S. Coast Guard, provided alerts, warnings and notices to vessels in the waters of Anclote Key, Florida, as to obstructions and/or hazards.

## COMMON ALLEGATIONS

14. Plaintiff incorporates all of the preceding paragraphs as though fully set forth herein.

15. Prior to August 13, 2017, the U.S. Coast Guard installed, operated and/or maintained an I-Beam located at Coordinates 20.09137 082 50 40 in the waters of Anclote Key, Florida, which installation, operation and/or maintenance made the I-Beam the responsibility of the U.S. Coast Guard.

16. Prior to August 13, 2017, the U.S. Coast Guard installed, reinstalled, operated and/or maintained markers, buoys and/or other signs or signals for an I-Beam located at Coordinates 20.09137 082 50 40 in the waters of Anclote Key, Florida.

17. Prior to August 13, 2017, the U.S. Coast Guard provided alerts, warnings and/or notices to vessels in the waters of Anclote Key, Florida, as to obstructions and/or hazards.

18. On August 13, 2017, Ironshore's Insured was operating the Insured Vessel near Anclote Key, Florida.

19. On August 13, 2017, while operating the Insured Vessel near Anclote Key, Florida at Coordinates 20.09137 082 50 40, the Insured's Vessel impacted, hit, struck and/or came into contact with a submerged I-Beam (hereinafter the "I-Beam"), which caused the Vessel to sink and incur total damages and towage charges (hereinafter "the Incident").

20. As a result of the Incident, and pursuant to the Policy, Ironshore made payments to or on behalf of its Insured in the amount of $256,700.00 for damages to the Insured Vessel and associated towage and storage costs.

21. Pursuant to the Policy, Ironshore obtained a right of subrogation for any payments made to the Insured from the Incident.

22. Ironshore is subrogated to the rights of the Insured under the Policy of insurance and by operation of law to the extent of its payments and is thus entitled to seek recovery from Defendant under principles of both equitable and legal subrogation.

23. On July 1, 2019, Ironshore submitted its subrogation claim from the Incident in the amount of $256,700.00 to the U.S. Coast Guard, which was acknowledged by email as received by Jana Leahy, Legal Services Command, with Case No. 18-CL-0331 being assigned to Ironshore's claim.

24. On July 19, 2019, Ironshore received a denial of claim letter from the U.S. Coast Guard dated July 12, 2019, in which the U.S. Coast Guard stated "The Claim is denied."

25. All preconditions to filing this action have been met as Ironshore's claim was presented within the applicable time required by the applicable statutes and was then denied by the U.S. Coast Guard.

## CAUSE OF ACTION

26. Plaintiff incorporates all of the preceding paragraphs as though fully set forth herein.

27. At the time of the Incident, the subject I-Beam was submerged under the surface of the water, such that without appropriate markers, buoys, notices, warnings and/or alerts, the Insured was unable to know that it was within the path of the Insured Vessel.

28. At all material times, the subject I-Beam was the property of the United States and/or the U.S. Coast Guard and/or the I-Beam was under the supervision, direction and/or control of the United States and/or the U.S. Coast Guard.

29. Prior to the Incident on August 13, 2017, the U.S. Coast Guard had not removed the subject I-Beam.

30. Prior to the Incident on August 13, 2017, the U.S. Coast Guard had not replaced, reinstalled and/or reattached lost, damaged and/or missing markers, buoys, signs and/or other signals to mark the location of the subject I-Beam.

31. Prior to the Incident on August 13, 2017, the U.S. Coast Guard had not provided adequate and/or updated alerts, warnings and/or notices to vessels, captains, the public and others using and/or operating vessels in the waters of Anclote Key, Florida, as to obstructions and/or hazards created by the unmarked I-Beam.

32. The U.S. Coast Guard's acts and/or omissions relating to the subject I-Beam were improper, unreasonable, negligent, and wanton and reckless in one or more of the following particulars:

   a. Failing to properly install, operate and/or maintain the I-Beam;
   b. Failing to provide adequate and/or updated alerts, warnings and/or notices as to obstructions, dangers, and/or hazards created by the I-Beam;
   c. Failing to install, reinstall, operate and/or maintained markers, buoys and/or other signs or signals for the I-Beam;
   d. Allowing an I-Beam it had submerged and/or allowed to be submerged under water to be left in a dangerous and/or hazardous condition;
   e. Failing to properly supervise, direct control over and/or manage the I-Beam;

    f.   Failing to maintain the I-Beam; and

    g.   Such other and further acts and/or omissions as may be disclosed during discovery.

33. As a direct and proximate result of the improper, unreasonable, negligent, and wanton and reckless actions and/or omissions of the U.S. Coast Guard, the Insured's Vessel was deemed a total loss and Plaintiff paid the Insured for those total damages and other incurred substantial damages and towage charges in the total amount of $256,700.00.

### PRAYER FOR RELIEF

WHEREFORE, Ironshore prays for judgment against the United States, as follows:

1. For damages in an amount to be determined at the time of trial;

2. For prejudgment and post-judgment interest in an amount allowed by law;

3. For attorney's fees and costs and expenses of suit as allowable by law; and

4. For such other relief as the Court may deem just and proper.

Dated:  August 7, 2019                Respectfully submitted,

                                          **COZEN O'CONNOR**

                                          By: */s/ Joseph F. Rich*
                                               Joseph F. Rich, Esq.
                                               Florida Bar No. 108569
                                               jrich@cozen.com
                                               Southeast Financial Center
                                               200 S. Biscayne Boulevard, Suite 3000
                                               Miami, Florida 33131
                                               Telephone No. (786) 871-3941
                                               Facsimile No.  (786) 220-0204
                                               *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this <u>7th</u> day of August 2019.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of U.S. Mail and/or Notice of Electronic Filing generated by CM/ECF.

By: <u>*/s/ Joseph F. Rich*          </u>
Joseph F. Rich, Esq.

## SERVICE LIST

United States of America
c/o U.S. Attorney's Office
Tampa Office - (Headquarters)
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone No. (813) 274-6000
Facsimile No.  (813) 274-6358

*Counsel for Defendant*